# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH A. SHOPE, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Civil Action No. 1:26-cv-584-KMN |
| v. | |
| THE HERSHEY COMPANY, and THE HERSHEY COMPANY EMPLOYEE BENEFITS ADMINISTRATIVE COMMITTEE, | (Judge Keli M. Neary) |
| Defendants. | |

## DEFENDANTS' REPLY IN SUPPORT OF
## THEIR MOTION TO DISMISS THE COMPLAINT

Sean K. McMahan (*pro hac vice*)
1717 Main St., Suite 3200
Dallas, TX 75201-7347
Telephone: (214) 466-4102
sean.mcmahan@morganlewis.com

Mary Ann McNulty (PA Bar No. 330631)
Jeremy P. Blumenfeld (*pro hac vice*)
2222 Market Street
Philadelphia, PA  19103
Telephone: (215) 963-5000
mary.mcnulty@morganlewis.com
jeremy.blumenfeld@morganlewis.com

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................3

I.   PLAINTIFF CANNOT SUE UNDER ERISA FOR ALLEGED
     VIOLATIONS OF REGULATIONS. ........................................................3

II.  COUNTS I FAILS AS A MATTER OF LAW ..........................................5

     A.   Plaintiff Identifies No Statutory Basis for Her Claim That
          ERISA Entitles Her to a Reasonable Alternative Standard. ...............5

     B.   The Plan Offered the Statutory "Full Reward." ..................................7

     C.   A Regulatory Preamble Cannot Create a Right of
          Reimbursement...............................................................................11

III. COUNT II FAILS AS A MATTER OF LAW............................................12

     A.   Plaintiff Lacks Article III Standing to Pursue Count II. ...................12

     B.   The Plan's Disclosures Satisfied Statutory Requirements.................14

IV.  COUNTS III AND IV FAIL AS A MATTER OF LAW.............................16

     A.   Plaintiff Does Not Allege Any Fiduciary Breach. ...........................16

     B.   Plaintiff's Prohibited Transaction Claims Do Not Identify Any
          Fiduciary Acts or "Transaction." .....................................................18

     C.   Plaintiff's Claims on Behalf of the Plan Separately Fail Because
          She Does Not Allege the Plan Suffered Any Loss............................20

V.   CONCLUSION........................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Warnaco, Inc.*,
  55 F.3d 117 (3d Cir. 1995) ..............................................................................17

*Amatangelo v. Nat'l Grid USA Serv. Co.*,
  2011 WL 3687563 (W.D.N.Y. Aug. 23, 2011) ................................................20

*Askew v. R.L. Reppert, Inc.*,
  2016 WL 447060 (E.D. Pa. Feb. 5, 2016) ..........................................................4

*AT&T Corp. v. FCC*,
  970 F.3d 344 (D.C. Cir. 2020)....................................................................11, 12

*Barrick v. Perry Cnty. Prison*,
  2023 WL 4631658 (M.D. Pa. July 19, 2023) ......................................................3

*Bocchino v. Trs. of Dist. Council Ironworkers Funds*,
  336 F. App'x 197 (3d Cir. 2009) ......................................................................18

*Brock v. Cathedral Bluffs Shale Oil Co.*,
  796 F.2d 533 (D.C. Cir. 1986)..........................................................................12

*Brown v. Peco Foods, Inc.*,
  812 F. Supp. 3d 664 (S.D. Miss. 2025) .............................................................19

*Laughman ex rel. Campbell v. Black & Veatch Corp.*,
  2010 WL 4514318 (M.D. Pa. Nov. 2, 2010) .......................................................5

*Dreibelbis v. Scholton*,
  274 F. App'x 183 (3d Cir. 2008) ........................................................................3

*Edmonson v. Lincoln Nat'l Life Ins.*,
  725 F.3d 406 (3d. Cir. 2013) ............................................................................18

*Groves v. Modified Ret. Plan*,
  803 F.2d 109 (3d Cir. 1986) ...............................................................................4

*Hannan v. Hartford Fin. Servs., Inc.*,
  688 F. App'x 85 (2d Cir. 2017) ........................................................................19

*Kollman v. Hewitt Assocs., LLC*,
    487 F.3d 139 (3d Cir. 2007) ..............................................................................4

*Leckey v. Stefano*,
    501 F.3d 212 (3d Cir. 2007), *as amended* (Dec. 21, 2007) ...........................20, 21

*Leslie v. Rentokil N. Am., Inc.*,
    2026 WL 950490 (E.D. Pa. Apr. 8, 2026).........................................................9, 18

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024).................................................................................*passim*

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).........................................................................................13

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985).........................................................................................20

*Mator v. Wesco Distribution, Inc.*,
    102 F.4th 172 (3d Cir. 2024) ...........................................................................20

*McCaffree Fin. Corp. v. ADP, Inc.*,
    2022 WL 970282 (D.N.J. Mar. 31, 2022) .........................................................18

*Mercy Cath. Med. Ctr. v. Thompson*,
    380 F.3d 142 (3d Cir. 2004) ............................................................................11

*Noel v. Pepsico, Inc.*,
    2026 WL 558118 (S.D.N.Y. Feb. 27, 2026), *appeal docketed*, No.
    26-862 (2d Cir. Apr. 3, 2026)........................................................................9, 20

*Parker v. TTEC Holdings, Inc.*,
    2026 WL 917789 (D. Colo. Mar. 30, 2026).....................................................9, 20

*Plesha v. Ascension Health All.*,
    2026 WL 279321 (E.D. Mo. Feb. 3, 2026) .......................................................13

*Sprague v. Gen. Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ...........................................................................17

*Trout v. Meijer, Inc.*,
    2026 WL 1098213 (W.D. Mich. Apr. 23, 2026)................................................15

iii

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*,
    579 F.3d 220 (3d Cir. 2009) ...............................................................................17

*United States v. Kahn*,
    5 F.4th 167 (2d Cir. 2021) ....................................................................................7

*United States v. Vogel Fertilizer Co.*,
    455 U.S. 16 (1982)................................................................................................8

*Wilson v. Whole Foods Market*,
    2026 WL 196517 (W.D. Tex. Jan. 20, 2026) .......................................................9

## Statutes

29 U.S.C. § 1002 ......................................................................................................18

29 U.S.C. § 1132 ......................................................................................................20

42 U.S.C. § 300gg-4 ....................................................................4, 6, 8, 11, 15, 16

## Other Authorities

29 C.F.R. § 2590.702 ..........................................................................................11, 12

## <u>INTRODUCTION</u>

Hershey encourages healthy lifestyle choices by offering a wellness program that charges employees who use tobacco a higher health insurance premium than those who do not.[1] As Plaintiff admits, Hershey also offers its tobacco-using employees a way to avoid this surcharge—they can complete the Quit for Life cessation program and avoid the surcharge going forward, even if they continue to use tobacco.[2] Plaintiff alleges that this program is illegal. Her Opposition to Defendants' Motion to Dismiss ("Opposition") confirms the Complaint fails to state a claim; argument after argument simply ignores statutory text and seeks to transform alleged *regulatory* violations into sweeping claims of *statutory* discrimination.

ERISA allows Plaintiff to seek redress for statutory violations, not regulatory ones. Plaintiff concedes this point yet fails to identify any statutory basis for her claimed entitlement to a reasonable alternative standard. The regulations do not even

---

[1] Capitalized terms have the same meaning as in the Memorandum of Law in Support of Defendants' Motion to Dismiss, ECF No. 28 ("Memorandum").

[2] Plaintiff argues that there is a fact dispute regarding whether the Plan offers reimbursement to participants who complete a tobacco cessation program. Opp'n at 15 n.3. That disagreement is irrelevant for purposes of Defendants' motion. Defendants *assumed* for purposes of the motion to dismiss that Plaintiff's factual allegations were correct, including that there was no reimbursement. Assuming that fact is true, Plaintiff's Complaint still does not state a claim because the statute does not require reimbursement.

purport to define terms in the statute. Instead, the 2013 Regulation that she cites eliminates words from the statute and imposes different obligations than the statute, which is precisely why those regulations are not valid. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

Moreover, Plaintiff's argument that the regulation requires Hershey to reimburse surcharges paid by participants who complete the Quit for Life program (Count I) lacks a basis in any relevant statute or even regulation. Both the statute and regulation require that the "full reward" for a wellness program be "made available" to all "similarly situated individuals." The Plan does that by giving all employees the opportunity to avoid the tobacco surcharge by either (1) certifying that they do not use tobacco or (2) completing a tobacco cessation program. The statute requires nothing more.

Plaintiff lacks standing to challenge the Plan's disclosures (Count II) because she does not plausibly allege any deficiencies in those disclosures caused her injury. Those disclosures comply with the only disclosure requirements in the statute in any event. Courts routinely dismiss the fiduciary breach and prohibited transaction claims that Plaintiff asserts here (Counts III and IV). As explained in Defendants' Memorandum and herein, the Court should dismiss the Complaint.

## ARGUMENT

### I.    PLAINTIFF CANNOT SUE UNDER ERISA FOR ALLEGED VIOLATIONS OF REGULATIONS.

The crux of Plaintiff's Complaint is that Defendants did not comply with DOL regulations that purportedly impose an obligation (1) to reimburse surcharges paid by participants who complete Quit for Life and (2) to include a physician accommodation statement in all materials describing the wellness program. Opp'n at 1-2; Compl. ¶ 64 (preamble to "wellness program regulations" allegedly requires reimbursement); ¶¶ 67-69 (Plan disclosures allegedly "violate ERISA's wellness program regulations"). ERISA provides causes of action for violations of its statutory provisions, not agency regulations. Mem. at 11-13. Plaintiff never disputes this legal argument. *See generally* Opp'n. She thus waives any claims based on alleged violations of the regulations, which are essentially all her claims. *Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (affirming dismissal where plaintiff failed to respond to arguments and district court "refused to consider an argument that, in effect, had been waived"); *Barrick v. Perry Cnty. Prison*, 2023 WL 4631658, at *1 (M.D. Pa. July 19, 2023) (when a "brief in opposition to a motion to dismiss . . . fails to respond to a substantive argument to dismiss a particular claim," the result is "the waiver or abandonment of that claim").

Plaintiff's only response is that the regulations "do not invent a separate cause of action" but rather "operationalize the statute," whatever that might mean. Opp'n

at 3. But the statute says nothing about reimbursement, nor does it require plans to accommodate physician requests at all, let alone to disclose that it will do so. 42 U.S.C. § 300gg-4(j)(3)(A) (plans can offer "a discount or rebate of a premium" or "the absence of a surcharge"); § 300gg-4(j)(3)(E) (requiring plans to disclose "the availability of a reasonable alternative standard" but not other information); *compare* 42 U.S.C. § 300gg-4(j)(3)(D) (giving plans the choice whether or not to seek confirmation from an individual's physician). Plaintiff cannot sue under ERISA Sections 502(a)(2) or (a)(3) for the purported failure to comply with requirements that exist only in regulations. Mem. at 11-12. As the Third Circuit explained in *Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139 (3d Cir. 2007) when it rejected ERISA claims based on alleged violations of DOL regulations, "the words 'this subchapter' in § 502(c) [of ERISA] refer only to violations of statutorily imposed obligations," and "does not embrace violations of regulations promulgated pursuant to the statute." *Id.* at 146-47 (quoting *Groves v. Modified Ret. Plan*, 803 F.2d 109, 111 (3d Cir. 1986)). The same "this subchapter" language appears in Sections 502(a)(2) and (a)(3) under which Plaintiff proceeds and, because she alleges violations of "regulations promulgated pursuant to the statute," the same outcome should follow. Mem. at 11-12; *see also Askew v. R.L. Reppert, Inc.*, 2016 WL 447060, at *15 (E.D. Pa. Feb. 5, 2016) (dismissing claim under ERISA Section 502(c) alleging that fiduciary did not produce documents required by DOL

4

regulations "that create additional disclosure requirements for plan administrators" that do not exist in the statute); *Laughman ex rel. Campbell v. Black & Veatch Corp.*, 2010 WL 4514318, at *4 n.3 (M.D. Pa. Nov. 2, 2010) (explaining that the Third Circuit has "definitively concluded" that a plaintiff cannot "recover statutory damages under 29 U.S.C. § 1132(c) for alleged violations of Department of Labor regulations" because "§ 1132 [ERISA Section 502] only permits recovery for statutorily imposed obligations which do not include violations of regulations promulgated pursuant to the statute" (cleaned up)).

## II.    COUNTS I FAILS AS A MATTER OF LAW

Count I fails for several additional reasons: (1) Plaintiff does not allege that she had a medical condition that entitled her to an alternative standard under the statute at all; and (2) the claim that Defendants failed to provide reimbursement of surcharges finds no support in the statutory language and is based entirely on Plaintiff's interpretation of the regulations.

### A.    Plaintiff Identifies No Statutory Basis for Her Claim That ERISA Entitles Her to a Reasonable Alternative Standard.

Plaintiff cannot state a claim that the Plan does not provide a "full reward" for completing an alternative standard because there is no statutory obligation to provide her such an alternative standard in the first place. That is because she does not allege that a "medical condition" made it "unreasonably difficult" for her to satisfy the "otherwise applicable standard" of not using tobacco or that it was "medically

5

inadvisable" for her to "attempt to" refrain from using tobacco products. Mem. at 13-15. Her only response is that the 2013 Regulation entitles her to an alternative even without any such medical condition. Opp'n at 20-22. But the regulatory language she cites cannot be reconciled with the statutory text.

Specifically, the 2013 Regulation reads the "medical condition," "unreasonably difficult," and "medically inadvisable" provisions out of the statute entirely, contradicting fundamental principles of statutory construction. *See* 42 U.S.C. § 300gg-4(j)(3)(D)(i). The regulation then expands the reasonable alternative standard requirements to all individuals, not just those with qualifying "medical conditions" as set forth in the statute. Plaintiff even admits this conflict between the statute and regulations, arguing that the regulations "eliminated [the statutory medical condition] requirement for *outcome-based* programs" like the Plan's surcharge program. Opp'n at 3-4; *see also id.* at 21 (arguing DOL "declined to impose" the "medical-hardship limitation into outcome-based programs").[3]

Plaintiff's argument that she is entitled to a "reasonable alternative standard" even without alleging that she has a qualifying "medical condition" finds no support

---

[3] Plaintiff's focus on the distinction between "activity-based" and "outcome-based" wellness programs is found only in the regulations. *See* Opp'n at 21. Plaintiff goes on to cite cases she claims "rejected the medical hardship theory." *Id.* at 21-22. But those cases merely found that participants were entitled to an alternative standard under the regulations and are not applicable here.

in the statutory language and should be rejected. The meaning of the statute was "fixed at the time of enactment" in 2010. *Loper Bright*, 603 U.S. at 400. The additional requirements in the 2013 Regulation on which Plaintiff's entire Complaint hangs and which do not reflect the best reading (or any reading) of the statutory language are not enforceable. Indeed, as a matter of common sense, a regulation that abrogates statutory text—as Plaintiff argues the regulation does here—cannot be the best reading of that statute. *Id.* ("It therefore makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best. In the business of statutory interpretation, if it is not the best, it is not permissible."); *United States v. Kahn*, 5 F.4th 167, 174-75 (2d Cir. 2021) ("[A] regulation that contravenes the plain language of the statute is invalid." (quotations omitted)). Moreover, the 2013 Regulation also is invalid because it is "fundamentally at odds with the manifest congressional design." *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 26 (1982). Congress specified which individuals must be provided with a reasonable alternative standard—those with a qualifying medical condition—and DOL cannot eliminate that language from the statute to expand that population by regulation.

### B.    The Plan Offered the Statutory "Full Reward."

Defendants also explained that Count I failed to state a claim because the Plan provides all participants who complete the Quit for Life program the "full reward"—

a complete waiver of the tobacco surcharge, the same reward offered to participants who attest they do not use tobacco. Mem. at 15-21. Plaintiff responds that "full reward" means a participant completing Quit for Life must receive reimbursement of surcharges paid prior to completion. Opp'n at 13. Once again, the statutory text forecloses that reading.

Congress explicitly stated that the "reward" offered by the wellness program is permitted to take several forms, including "a discount or rebate of a premium" or "the absence of a surcharge." 42 U.S.C. § 300gg-4(j)(3)(A). Congress thus made clear that the "reward" may be *either* the retrospective "rebate" of a previously paid surcharge *or* a prospective "discount" or "absence" of a future surcharge. Plaintiff's interpretation would require that every alternative standard provide a "reward" that includes both a prospective "discount" and a retrospective "rebate"—an interpretation that in fact misreads the statutory language. *See Parker v. TTEC Holdings, Inc.*, 2026 WL 917789, at *4 (D. Colo. Mar. 30, 2026).[4]

---

[4] Plaintiff largely relies on out-of-circuit cases that ignore the different forms of "reward" that the statute permits. Opp'n at 14-15. For instance, in *Wilson v. Whole Foods Market*, 2026 WL 196517 (W.D. Tex. Jan. 20, 2026), at *9, the court focused exclusively on the reward being an "absence of the surcharge" and concluded that, since "absence" already implied the complete removal of the surcharge, "full" must mean something else. This reasoning ignores the other permissible forms of "reward" and fails to adhere to established canons of statutory construction. The only in-circuit case Plaintiff cites—*Leslie v. Rentokil N. Am., Inc.*, 2026 WL 950490 (E.D. Pa. Apr. 8, 2026)—uncritically adopts *Wilson*'s incorrect interpretation.

In short, if the "reward" offered by the wellness program is the absence of a surcharge, the "full reward" language in the statute means that participants who complete Quit for Life should receive the same "absence of a surcharge" that participants who do not use tobacco receive (i.e., paying $100 less in premiums per month), rather than a "partial reward" (i.e., paying $50 less in premiums per month). *See Noel v. Pepsico, Inc.*, 2026 WL 558118, at *10 (S.D.N.Y. Feb. 27, 2026), *appeal docketed*, No. 26-862 (2d Cir. Apr. 3, 2026); *Parker*, 2026 WL 917789, at *4. The Plan does exactly that: participants avoid the "full" surcharge whether they attest during annual enrollment that they do not use tobacco or whether they use tobacco and complete the Quit for Life program. Just like the statute does not require plans to allow participants to report no tobacco use any time they want (or every single day) and get a refund of the surcharges they paid prior, it does not *require* plans to allow participants to complete an alternative standard (tobacco cessation program) any time they want and get a refund of the surcharges they paid prior.

This interpretation does not render "full" superfluous, as Plaintiff claims. Opp'n at 15-16. Because the statute explicitly permits the "reward" to be a "rebate" or "discount" without saying how much of the surcharge would be "rebated" or "discounted," the addition of "full" provides important clarification—individuals who complete a cessation program must receive the same full rebate or same full discount as those who do not use tobacco in the first place. Plaintiff's other

9

arguments ignore the statutory language and defy logic. She argues that the Plan does not treat "similarly situated participants" the same because a participant who does not use tobacco on January 1 does not pay surcharges for the entire year, whereas a participant who completes the Quit for Life program "in October pays nine months of surcharges that no one else paid." *Id.* at 18. But these participants *are* treated the same: on January 1, the participant who uses tobacco pays the surcharge, whereas the participant who does not pays no surcharge. Then, the participant who adheres to the wellness program and completes Quit for Life on October 1 pays no surcharge, just as the participant who does not use tobacco on October 1 pays no surcharge. That is precisely what the law requires.

Finally, Plaintiff's demand for retroactive rewards contravenes the statute for a different but related reason. The statute provides that health plans can offer "discounts or rebates . . . in return for *adherence* to programs of health promotion and disease prevention." 42 U.S.C. § 300gg-4(b)(2)(B) (emphasis added). Requiring reimbursement of surcharges paid by participants for periods of time during which they choose *not to adhere* to a program of health promotion and disease prevention, i.e., before they complete a tobacco cessation program, would flout this statutory protection of rewards "in return for adherence" and once again is not the best reading of the statute. *Loper Bright*, 603 U.S. at 400.

10

### C.    A Regulatory Preamble Cannot Create a Right of Reimbursement.

Plaintiff claims the preamble to the regulations requires reimbursement, even if the statute and the regulation itself do not. Opp'n at 14. That argument, too, fails.

To start, as Defendants explained, when an agency's interpretation appears only in a preamble rather than in the codified regulation the preamble cannot create substantive obligations. Mem. at 19; *see also Mercy Cath. Med. Ctr. v. Thompson*, 380 F.3d 142, 155 (3d Cir. 2004) ("Agency statements contained in opinion letters, policy statements, agency manuals, and enforcement guidelines lack the force of law and do not warrant *Chevron*-style deference." (cleaned up)). Here, the text of the operative regulation in 29 C.F.R. § 2590.702 does not require reimbursement. That is significant, because the "'real dividing point' between the portions of a final rule with and without legal force is designation for 'publication in the Code of Federal Regulations.'" *AT&T Corp. v. FCC*, 970 F.3d 344, 350 (D.C. Cir. 2020) (quoting *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 539 (D.C. Cir. 1986) (Scalia, J.)). Instead, the regulation reiterates the statutory command that the "full reward under the outcome-based wellness program must be available to all similarly situated individuals," 29 C.F.R. § 2590.702(f)(4)(iv), but says nothing about the "reimbursement" that Plaintiff attempts to foist on ERISA-governed health plans. The Plan thus complies with the only regulations that DOL has ever sought to give the force of law. Under *Loper Bright*, moreover, if the statute does not require

11

reimbursement, then the regulation cannot impose that requirement. *Loper Bright*, 603 U.S. at 400; *AT&T*, 970 F.3d at 351 (regulations control over conflicting preamble language).

## III.   COUNT II FAILS AS A MATTER OF LAW.

Count II alleges that Defendants' disclosures about the wellness program "independently violate ERISA's wellness program regulations, which require that 'all plan materials' describing a health-contingent wellness program clearly disclose contact information for accessing a reasonable alternative standard and a physician accommodation statement." Compl. ¶ 69. As Defendants explained, there are a host of reasons for dismissing this claim, and the Opposition does not alter this conclusion.

### A.   Plaintiff Lacks Article III Standing to Pursue Count II.

Plaintiff lacks Article III standing to challenge the Plan's communications because she fails to allege how the purported notice defects caused her any injury. Mem. at 21-23. The Opposition glosses over this point, arguing instead that she paid an allegedly unlawful surcharge so she must have suffered an injury in fact. Opp'n at 11. That may be sufficient to plead an injury in fact, but that alone is not sufficient for Article III standing. The Opposition does not dispute that there are no allegations that the alleged injury is traceable to the lack of disclosure of a physician's accommodation statement, the only purported violation in Count II. Mem. at 22-23.

12

In other words, even if Plaintiff had received such a statement, she does not contend that she would have completed an alternative and avoided the surcharge. Plaintiff argues that "[w]hether she would have behaved differently" if the Plan included a physician's accommodation statement "goes to damages ***and causation***." Opp'n at 12 (emphasis added). That is exactly Defendants' point. Because there is no causation, there is no standing. *E.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (for Article III standing "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant") (cleaned up); *Plesha v. Ascension Health All.*, 2026 WL 279321, at *7 (E.D. Mo. Feb. 3, 2026) (dismissing similar claim because "[t]he cause of Plaintiff's increased expenses is not the notice given in the disclosures about the Plan, but the structure of the Plan itself. . . . Put another way, Plaintiff would be in the exact same place with or without the purported defects in the notice."). That is true here too. According to the Complaint, Plaintiff used tobacco, never completed the cessation program offered to her, and thus paid a surcharge. She did not allege that she paid the surcharge because the Plan lacked language about accommodating the recommendation of a physician, nor does she allege that she would not have paid the surcharge had the plan included the physician accommodation statement.

13

### B.    The Plan's Disclosures Satisfied Statutory Requirements.

The Opposition attempts to save Plaintiff's disclosure claim by ignoring the allegations in the Complaint and by arguing that Defendants did not satisfy disclosure obligations that are nowhere to be found in the statute or regulations.

Plaintiff first parrots her allegation that the SPD did not provide "contact information for accessing the alternative standard," Opp'n at 2, 8, but never disputes Defendants' argument that the SPD—*as quoted in the Complaint*—in fact provides that information.[5] Mem. at 9, 21 n.8, 22. Plaintiff does not explain why that contact information is insufficient or why she continues to waste the parties' and Court's resources on this plainly meritless allegation.[6]

Plaintiff also does not dispute that the statute imposes a single notice requirement—Plan materials "describing the terms of the wellness program" must also inform participants of the "availability of a reasonable alternative standard." 42 U.S.C. § 300gg-4(j)(3)(E). The SPD satisfies this requirement. Mem. at 23.

And regardless, because the SPD does not describe the "wellness program," there is no requirement to include a physician's accommodation statement. Mem. at

---

[5] Plaintiff appears to have abandoned any claims based on the benefit guides since those documents are never mentioned in the Opposition.

[6] Plaintiff argues the SPD "does not clearly explain how to access the program" and "does not explain whether completion entitles participants to relief from surcharges already assessed." Opp'n at 8. She never identifies any statutory or regulatory language that requires these sorts of disclosure. *See id.*; *see also* Compl.

14

25. Plaintiff's citation to *Trout v. Meijer, Inc.*, 2026 WL 1098213 (W.D. Mich. Apr. 23, 2026), confirms this conclusion. In *Trout*, the court held that the plan disclosure described the wellness program because it stated the (1) amount of the surcharge (2) explained the "certification process" for avoiding the surcharge and (3) noted the existence of an alternative tobacco cessation program. *Id.* at *5. Here, the SPD does not discuss the amount of the surcharge or any "certification process" but merely mentions that a surcharge exists in the context of describing the alternative standard. Compl. ¶ 37; *Trout*, 2026 WL 1098213, at *6 (explaining distinction between describing a "wellness program" and "reasonable alternative standard"). Under the statute, that does not trigger any disclosure requirement and disposes of Count II. 42 U.S.C. § 300gg-4(j)(3)(E) ("If plan materials disclose that such a program is available, without describing its terms, the disclosure under this subparagraph shall not be required.").

As with all her claims, Plaintiff's disclosure claim rests on alleged regulatory violations. She argues that Hershey's entire wellness program is illegal because the SPD allegedly describes the terms of the wellness program without including the physician's accommodation statement mentioned in the 2013 Regulation. Opp'n at 22-23. But as Defendants previously showed, that regulatory requirement cannot survive scrutiny under *Loper Bright* because it does not reflect the best reading of the statute. Mem. at 23-24. The statute does not require plans to "accommodate"

15

anything from a physician. It refers to a "physician" exactly once: "[i]f reasonable under the circumstances, the plan or issuer *may* seek verification, such as a statement from an individual's physician, that a health status factor makes it unreasonably difficult or medically inadvisable for the individual to satisfy or attempt to satisfy the otherwise applicable standard." 42 U.S.C. § 300gg-4(j)(3)(D)(ii) (emphasis added). There is no basis in the statute for requiring plans to accommodate a participant's physician's recommendations regarding an alternative, and therefore no basis to say that to participants.

## IV.    COUNTS III AND IV FAIL AS A MATTER OF LAW.

### A.    Plaintiff Does Not Allege Any Fiduciary Breach.

Defendants explained that Plaintiff's claims challenge the structure and design of the Plan and do not challenge fiduciary conduct. Mem. at 25-30. In response, Plaintiff admits that the design of Defendants' wellness program cannot support a fiduciary breach claim but nonetheless argues the Complaint challenges three types of fiduciary conduct. Each argument fails in turn.

*First*, she claims the Complaint challenges "the ongoing administration" of the wellness program. Opp'n at 25. She provides no details about that "administration," why it was allegedly unlawful, or why it would constitute discretionary fiduciary conduct. Nor does she point to any allegations in the Complaint challenging "administration." Such conduct—whatever it is—does not state a claim.

16

*Second*, she points to Defendants' "control over participants communications that omit required information." *Id*. Assuming *arguendo* that the disclosures somehow failed the statutory requirements (they did not), the Third Circuit has repeatedly held that disclosure obligations and fiduciary obligations are distinct. *See Ackerman v. Warnaco, Inc.*, 55 F.3d 117 (3d Cir. 1995) (violation of ERISA's disclosure requirement does not sustain a fiduciary breach claim absent "extraordinary circumstances"). Plaintiff cannot use general fiduciary duties to expand the specific disclosure obligations required under the statute. *E.g.*, *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 405-06 (6th Cir. 1998). And, in any event, a plaintiff asserting a fiduciary-breach claim based on plan communications must allege a "misrepresentation or inadequate disclosure" that was "material," and that the plaintiff "detrimentally relied on the misrepresentation or inadequate disclosure." *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009). The Third Circuit has held that even a material omission is insufficient absent detrimental reliance. *Bocchino v. Trs. of Dist. Council Ironworkers Funds*, 336 F. App'x 197 (3d Cir. 2009). Here, Plaintiff fails to allege that the missing information

17

constitutes a "material" omission or detrimental reliance. She fails to allege a fiduciary breach based on these alleged omissions.[7]

***Third***, Plaintiff claims Defendants acted as fiduciaries in making "discretionary decisions about how to use the surcharge proceeds." Opp'n at 25. Plaintiff relies on *Edmonson v. Lincoln Nat'l Life Ins.*, 725 F.3d 406 (3d. Cir. 2013), where the defendant allegedly invested plan assets but retained the returns itself. Nothing similar is alleged here. At most, the Complaint alleges Defendants reduced the amount of ***corporate assets*** it would have otherwise contributed to the Plan because Plan asset increased through surcharges. But that is not an exercise of "authority or control" over ***Plan assets***. 29 U.S.C. 1002(21)(A); Opp'n at 27 (admitting "uncontributed employer funds are not plan assets"). Employer decisions regarding funding levels are a settlor decision, not a fiduciary decision. *See McCaffree Fin. Corp. v. ADP, Inc.*, 2022 WL 970282, at *7 (D.N.J. Mar. 31, 2022).

### B.    Plaintiff's Prohibited Transaction Claims Do Not Identify Any Fiduciary Acts or "Transaction."

Plaintiff's prohibited transaction claim fails for similar reasons. Plaintiff now admits Defendants' unpaid corporate assets are "not plan assets" and are not the basis of her prohibited transaction claim. Opp'n at 27. Instead, she alleges the "transaction"

---

[7] None of Plaintiff's out-of-circuit authorities address the Third Circuit's requirements, Opp'n at 25-27, and *Leslie*—her only in-circuit case—permitted a fiduciary-duty claim to proceed without addressing Third Circuit precedent.

18

here involves the "deployment" and misuse of surcharges. *Id.* at 28. Despite that colorful language, Plaintiff alleges no actual misuse of surcharges. The Complaint contains no allegations that surcharges were transferred to another party to enrich it and no allegations surcharges were used to pay non-Plan expenses. The Complaint describes only one use of surcharges—namely, to provide benefits to participants in accordance with the Plan's terms, the same way other employee and employer contributions are used. That does not state a prohibited transaction claim. To the extent that Plaintiff comes back to Defendants' decisions regarding uncontributed corporate assets, decisions regarding non-Plan assets are not fiduciary conduct.

Courts have repeatedly dismissed prohibited transaction claims based on allegations that an employer reduced its own health plan contributions because employer premiums covered plan benefits. *See Brown v. Peco Foods, Inc.*, 812 F. Supp. 3d 664, 676 (S.D. Miss. 2025) (reduction of employer contributions does not constitute a "transaction" under Section 1106); *Hannan v. Hartford Fin. Servs., Inc.*, 688 F. App'x 85, 90-91 (2d Cir. 2017) (no "self-dealing" under § 1106(b)(1) when employer reduced costs of providing basic participant life insurance based on participant premiums paid for supplemental life insurance); *Amatangelo v. Nat'l Grid USA Serv. Co.*, 2011 WL 3687563 (W.D.N.Y. Aug. 23, 2011) ("no evidence of prohibited transaction where employer used employee contributions to pay for employer's insurance liabilities").

19

**C.      Plaintiff's Claims on Behalf of the Plan Separately Fail Because She Does Not Allege the Plan Suffered Any Loss.**

Plaintiff argues that she is not required to allege any loss to the Plan in order to bring her fiduciary duty claims on behalf of the Plan under 29 U.S.C. § 1132(a)(2). Opp'n at 29. That claim contradicts controlling Third Circuit case law. In *Leckey v. Stefano*, 501 F.3d 212, 226 (3d Cir. 2007), *as amended* (Dec. 21, 2007), the Third Circuit addresses the pleading requirement for a fiduciary breach claim, holding that the elements of such a claim include "causing a loss to the plan." *Id.* The Third Circuit, in turn, relied upon the Supreme Court's holding in *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 139 (1985), that such actions "must be brought on behalf of the plan itself—and must, therefore, seek to restore losses *to the plan*." 501 F.3d at 226. Subsequent Third Circuit decisions have reiterated this requirement, as have district court decisions dismissing identical claims. *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 184 (3d Cir. 2024) (finding the "elements of an ERISA breach of fiduciary duty claim" include "a loss to the plan"); *Noel*, 2026 WL 558118, at *14; *Parker*, 2026 WL 917789, at *6.

Plaintiff separately argues that she alleges a loss because the Plan should have received both the surcharges and the same amount in employer contributions as in prior years (before the surcharges). But the Third Circuit has held that, in determining whether a plan loss has occurred due to a fiduciary breach, a "comparison must be made between the value of the plan assets before and after the breach." *Leckey v.*

20

*Stefano*, 501 F.3d at 226. Here, the Complaint alleges the amount of plan assets was the same before and after the breach: before surcharges were collected, the Plan received employee premiums and employer contributions; after the purported breach, the Plan received employee premiums, an additional amount in surcharges, and employer contribution allegedly reduced by the amount of the surcharges. Compl. ¶ 74. Under the Third Circuit's framework, there was no loss to the Plan.

## V.   CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint.

DATED: June 9, 2026                    Respectfully submitted,


                                       MORGAN, LEWIS & BOCKIUS LLP

                                       */s/ Sean K. McMahan*
                                       Sean K. McMahan (*pro hac vice*)
                                       1717 Main St., Suite 3200
                                       Dallas, TX 75201-7347
                                       Telephone: (214) 466-4102
                                       Facsimile: (214) 466-4001
                                       sean.mcmahan@morganlewis.com

                                       Mary Ann McNulty (PA Bar No. 330631)
                                       Jeremy Blumenfeld (*pro hac vice*)
                                       2222 Market Street
                                       Philadelphia, PA  19103
                                       Telephone: (215) 963-5000
                                       Facsimile: (215) 963-5001
                                       mary.mcnulty@morganlewis.com
                                       jeremy.blumenfeld@morganlewis.com

## LOCAL RULE 7.8(B)(2) CERTIFICATE OF BRIEF LENGTH

Pursuant to the Local Rule 7.8(b)(2), Defendants certify this brief includes 4,909 words excluding the table of contents, table of authorities, case caption, signature lines, and certificates.

## CERTIFICATE OF SERVICE

I certify that on June 9, 2026, a true-and-correct copy of the foregoing was filed via the Court's CM/ECF system for electronic service on counsel of record.

*/s/ Sean K. McMahan*
Sean K. McMahan

22